IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| TORIAN ALEXANDER, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | Case No. 1:13-cv-00376 (RC)(ZJH) |
| v. | § § | JURY TRIAL DEMANDED |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as TRUSTEE for MORGAN STANLEY ABS CAPITAL I INC. TRUST 2005-HE7, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005 HE-7, JPMORGAN CHASE BANK, N.A., and NATIONWIDE TITLE CLEARING, INC., | § § § § § § § § § | RELATED CASES:<br><br>1:13-cv-00229 (MAC)(ZJH)<br>1:13-cv-00354 (RC)(ZJH)<br>1:13-cv-00389 (RC)(ZJH)<br>1:13-cv-00406 (RC)(ZJH) |
| Defendants. | § § | |

**DEFENDANTS' EMERGENCY MOTION TO STAY DISCOVERY AND RELATED
DEADLINES PENDING RESOLUTION OF DEFENDANTS' MOTIONS TO DISMISS,
OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c) and Local Civil Rule CV-7(m), Defendants in the above-captioned, coordinated proceedings together file this Emergency Motion to Stay Discovery and Related Deadlines Pending Resolution of Defendants' Motions to Dismiss, or in the Alternative, for a Protective Order,[1] respectfully showing as follows.

## INTRODUCTION

Plaintiffs initiated the above-captioned proceedings in a series of similar complaints filed between April 16 and June 10, 2013. [1:13-cv-00229, Dkt. No. 1; 1:13-cv-00354, Dkt. No. 1; 1:13-cv-00376, Dkt. No. 1; 1:13-cv-00389, Dkt. No. 1; and 1:13-cv-00406, Dkt. No. 1.] In lieu of answering the complaints, Defendants filed their original Motions to Dismiss. [1:13-cv-00229, Dkt. No. 21; 1:13-cv-00354, Dkt. No. 5; 1:13-cv-00376, Dkt. No. 14, 15 and 32; 1:13-cv-

---
[1] This Motion will be filed in each related case listed above in the caption.

00389, Dkt. No. 12; and 1:13-cv-00406, Dkt. No. 6.] Following complete and extensive briefing on the Motions to Dismiss, and after the Motions to Dismiss had been on file for six months, Plaintiffs amended their original complaints. [1:13-cv-00229, Dkt. No. 41 and 43; 1:13-cv-00354, Dkt. No. 37; 1:13-cv-00376, Dkt. No. 49; 1:13-cv-00389, Dkt. No. 29; and 1:13-cv-00406, Dkt. No. 42.] Based on the filing of the amended complaints, the Court issued orders denying as moot Defendants' original Motions to Dismiss, which led Defendants to file the currently pending Motions to Dismiss. [1:13-cv-00229, Dkt. No. 44 and 46; 1:13-cv-00354, Dkt. No. 38 and 40; 1:13-cv-00376, Dkt. No. 50, 52 and 53; 1:13-cv-00389, Dkt. No. 30 and 32; and 1:13-cv-00406, Dkt. No. 43 and 45.]

Despite the fact that Plaintiffs previously agreed to stay at least certain discovery efforts, either pending the resolution of the original Motions to Dismiss or the Court's ruling on class certification, they recently began issuing an overwhelming volume of written discovery. The breadth of the currently outstanding discovery is both unreasonable and unduly burdensome. By way of example, 5,948 separately-numbered requests for admission have been served in the *Holmes* matter, 1,738 in *Henry,* 1,793 in *Alexander,* and 1,917 in *Livingston*.[2] Moreover, Plaintiffs have also served requests for production and interrogatories in each case seeking information related to each potential member of the alleged putative class. Responding to these wide-ranging, individual inquiries will require Defendants to obtain and review real property records and other documents related to thousands of loans.[3] The burden and expense involved in responding to such requests is substantial and obvious from the requests themselves.

---

[2] The requests for admissions, interrogatories, and requests for production referenced herein have yet to be served in the *Bowman* matter, Case No. 1:13-cv-00389 (RC)(ZJH).

[3] True and correct copies of the referenced requests for admission, requests for production, and interrogatories are attached hereto as **Exhibits 1-4.**

As set forth in further detail herein, Defendants are thus requesting a brief stay of discovery and related deadlines while awaiting the Court's decision on their Motions to Dismiss, which will be fully briefed by March 17, 2014. If granted, the temporary stay would obviate the need for discovery altogether, including the need for the Court to resolve the numerous discovery disputes that have arisen and that are likely to arise as discovery continues.[4] In the alternative, Defendants seek a protective order limiting Plaintiffs to no more than 25 requests for admission per case, including any subparts, aimed at seeking information necessary for class certification purposes only, to avoid additional unnecessary burden and expense.

**Because objections and responses to the earliest served requests are due on March 3, 2014, Defendants request that the Court enter a ruling on this motion prior to March 3.**

## ARGUMENT AND AUTHORITIES

### A. MOTION FOR STAY

In the Fifth Circuit, "[a] trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124, 1133 (5th Cir. 1976) (trial court's order staying discovery appropriate pending resolution of dispositive motion to prevent "putting the parties to the expense of conducting broad discovery on all issues raised in

---

[4] Defendants recognize that the Court has previously denied an agreed request for a discovery stay in the *Livingston* matter because "[t]he parties ha[d] not demonstrated good cause for deviating from Local Civil Rule 26." [1:13-cv-00229, Dkt. No. 27.] However, at the time the Court denied that request, neither Defendants nor the Court were aware of the burdensome discovery Plaintiffs intended to pursue because no discovery had been served and no schedule was entered by the Court. Moreover, when Defendants agreed to the scheduling orders governing the related matters, they were unaware of both the breadth of Plaintiffs' intended discovery and Plaintiffs' intent to file amended complaints mooting Defendants' Motions to Dismiss many months into the proceedings. As demonstrated herein, there is "good cause" to "deviat[e] from Local Civil Rule 26."

the complaint")). "That broad discretion is particularly important in complex litigation . . . where fairness to all litigants as well as judicial economy require that the length and burdensomeness of discovery and motions be limited." *Munoz v. Orr*, 200 F.3d 291, 305 (5th Cir. 2000).

In determining whether to grant a stay of discovery, courts typically look to "(1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay. A stay of discovery may be appropriate where the disposition of a motion to dismiss might preclude the need for the discovery altogether thus saving time and expense." *Von Drake v. NBC*, No. 3-04-CV-0652R, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004) (citations omitted and quotation marks omitted) (collecting cases). Courts also consider whether issuance of a stay will pose a substantial risk of prejudice to the opposing party. *See Herlik v. United States*, No. 07-cv-000658-WDM-KMT, 2008 WL 356513, at *2 (D. Colo. Feb. 7, 2008) ("a stay may be appropriate if resolution of a preliminary motion may dispose of the entire action") (citation and quotation marks omitted). All of the foregoing factors weigh in favor of granting a stay here.

**1. The Breadth of Discovery Sought is Unduly Burdensome and Harassing.**

While parties generally "[are] not excused from responding to discovery because there are pending motions to dismiss," discovery stays are appropriate where the proponents are capable of "mak[ing] out a clear case of hardship or inequity in being required to go forward." E.D. Tex. Civ. R. 26; *Landis*, 299 U.S. at 255. Good cause thus exists where "the party from whom discovery is sought shows that it would suffer 'annoyance, embarrassment, oppression or undue burden or expense' absent a stay." *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 766, 767 (W.D. Tex. 2008) (quoting Fed. R. Civ. P. 26(c)). Defendants are

already in receipt of thousands of requests for admission along with additional requests for production and interrogatories, and have no reason to expect that further discovery efforts are not being contemplated. The sheer number of the outstanding requests alone warrants the issuance of a stay. *See, e.g., Misco, Inc. v. United States Steel Corp.*, 784 F.2d 198, 206 (6th Cir. 1986) (2,028 requests for admission are an "abuse of the discovery process"); *Wigler v. Electronic Data Sys. Corp.*, 108 F.R.D. 204, 205-07 (D. Md. 1985) (1,664 requests for admission are "an unjustifiable number of requests" and harassing); *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, No. 3:2003-57, 2007 WL 1300772, at *2 (W.D. Pa. May 2, 2007) (granting motion for protective order based on 635 requests for admission); *Gannon v. United States*, No. 03-6626, 2006 WL 2927639, at *1 (E.D. Pa. Oct. 6, 2006) (granting protective order based on 1,407 requests for admission); *Leonard v. Univ. of Del.*, No. 96-360 MMS, 1997 WL 158280, at *7 (D. Del. Mar. 20, 1997) (800 requests for admission are "unreasonable" "unduly burdensome," "oppressive," and intended "to harass"); *Phillips Petroleum Co. v. N. Petrochemical Co.*, No. 84 C2028, 1986 WL 9186, at *1 (N.D. Ill. Aug. 19, 1996) (437 requests for admission are improper).

Moreover, the requests for admission, requests for production, and interrogatories that have been served include numerous individual inquiries regarding **every putative class member**, which will effectively require Defendants to review every loan in every securitization trust at issue to formulate responses. In their requests for admission, Plaintiffs ask Defendants to admit or deny: (1) that the "Depositor sold, transferred, assigned, set over, and otherwise conveyed" each particular loan to the 2003-1 Trust; (2) that each particular loan is "secured by real property in the State of Texas"; and (3) that an assignment related to each particular loan is

"recorded in the State of Texas."[5] (*See* Ex. 1 at Req. for Adm. 79-5,943.) To respond to these requests, Defendants will be required to pay the costs necessary to obtain thousands of public records and to review public records, loan documents, and the PSAs for many thousands of loans. The purported subjects of the requests for admission also go "beyond the permissible parameters of a request for admission . . . ." *Martin Marietta*, 2007 WL 1300772, at *2 (stating that requiring a defendant to reference documents outside of the requests was unduly burdensome for 500 requests). Here the number of requests requiring a review of documents outside the requests is 5,948 in *Holmes*, 1,738 in *Henry,* 1,793 in *Alexander,* and 1,917 in *Livingston*. The requests should be "subject to a protective order as these requests do not comply with Rule 36 because of their form which references outside matters that must be reviewed prior to answering each request." *Id.* at *2-3. ("to allow five hundred forty-four requests for admission that reference documents external to the requests would in fact defeat the purpose of requests for admission").[6]

The requests for production seek to impose similarly unnecessary burdens on Defendants. Among other things, Plaintiffs ask Defendants to produce: (1) copies of each loan in the proposed class, which encompasses all loans in each trust that are secured by property in Texas;

---

[5] Substantially similar versions of these requests were served in every case except *Bowman*. The cited language is from requests for admission served in the *Holmes* matter. Defendants note that these individualized inquiries related to each loan in every trust illustrate only a small portion of the individualized inquiries that will overwhelm class issues at the class certification stage. Moreover, to respond to each of the requests, Defendants would be required to undertake a loan-by-loan inquiry that would entail hundreds (if not thousands) of hours of work. Thus, Plaintiffs' own discovery requests demonstrate why class certification is not appropriate.

[6] Many of the requests for admission also are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence because they seek admissions regarding the tax treatment of the various trusts. Using *Holmes* as an example, Plaintiffs seek an admission whether "[t]he 2003-1 Trust qualified as a 'REMIC'" in each calendar year from the creation of the trust to the present. (*See* Ex. 1 at Req. for Adm. 17-27.) Plaintiffs also ask whether "the 2003-1 Trust complied with all 'REMIC Provisions' in Section 860A through 860G, Subchapter M, Chapter 1 of the . . . INTERNAL REVENUE CODE OF 1986" for each calendar year from the creation of the trust to the present. (*See* Ex. 1 at Req. for Adm. 29-39.) Because Plaintiffs have not—and cannot—allege that they were intended third-party beneficiaries of the PSAs, they lack standing to challenge the operation of the trusts or to assert violations of the PSAs. *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 342 (5th Cir. 2013) (per curiam); *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 228 (5th Cir. 2013).

(2) copies of all assignments for each loan in the proposed class; and (3) copies of all recorded assignments for each loan in the proposed class. (*See, e.g.*, Ex. 1 at Req. for Prod. 35, 37-38.) The substantial burden of these requests is evident on their face. The request for recorded assignments alone will require Defendants to search trust records to identify loans in the potential class and to pay the costs necessary to obtain copies of recorded assignments from county clerks throughout Texas. Based on Plaintiffs' class definition, this will necessitate reviewing trust records and obtaining copies of recorded assignments for thousands loans. Plaintiffs' interrogatories take their burdensome discovery requests one step further. In their interrogatories, Plaintiffs ask Defendants to "[i]dentify and list the total number of recorded assignments" for properties located in Texas for each trust. In addition to the burdens outlined above, this interrogatory would require Defendants to compile a list for over a thousand loans in *Holmes* alone.

To avoid the substantial—and potentially unnecessary—burden apparent from the representative examples of discovery requests outlined above, Defendants ask for a brief stay of discovery while the parties await the Court's decision on their Motions to Dismiss.

2. **Resolution of the Pending Motions to Dismiss would be Case-Dispositive and thus Preclude the Need for Discovery Altogether**

If granted, the pending Motions to Dismiss would dispose of the entirety of Plaintiffs' cases with prejudice and thus preclude the need for discovery altogether. Even the requisite "peek" into the merits of Defendants' Motions to Dismiss demonstrates they are "clearly meritorious and case dispositive." *Allmond v. City of Jacksonville*, 2008 WL 2704426, at *2 (M.D. Fla. July 8, 2008). While Defendants decline to burden the Court with a reiteration of the arguments presented therein, Defendants' Motions to Dismiss are based on binding, recent Fifth

Circuit precedent dismissing identical claims for lack of standing and failure to state a claim upon which relief may be granted. *Farkas*, 737 F.3d at 342; *Reinagel*, 735 F.3d at 228.

Courts in the Fifth Circuit have routinely held that a stay of discovery is appropriate in the face of a well-founded motion to dismiss in order to save the parties the unreasonable burden and undue expense of responding to outstanding discovery requests. *See, e.g., Lowe v. Wellcare Health Plans, Inc.*, No. 3:11-cv-0009-L, 2011 WL 5869757, at *1 (N.D. Tex Nov. 21, 2011) (granting stay pending resolution of motion to dismiss); *Tostado v. Citibank (S. Dakota), N.A.*, No. 09-00574, 2009 WL 4774771, at *1 (W.D. Tex. Dec. 11, 2009) (granting stay of discovery pending resolution of motion to dismiss in part to "save the parties and the Court the unnecessary cost and inconvenience associated with discovery on claims ultimately dismissed") (internal quotation marks omitted); *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, No. H-08-cv-0857, 2008 WL 8465061, at *1 (S.D. Tex. Aug. 11, 2008) (granting stay of discovery due to its potential to be "broad, time-consuming and expensive"); *Parish of Jefferson, La. v. S. Recovery Mgmt., Inc.*, No. 96-00230, 1996 WL 144400, at *2 (E.D. La. Mar. 27, 1996) ("even minimal [discovery] cost is unwarranted where imminent jurisdictional rulings may render such discovery altogether moot."). The rationale behind granting a stay of discovery in the face of a pending motion to dismiss has been succinctly described by the Eleventh Circuit as follows:

> Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins. Such a dispute always presents a purely legal questions; there are no issues of fact because the allegations contained in the pleading are presumed to be true. Therefore, neither the parties nor the court have any need for discovery before the court rules on the motion.

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (footnote and internal citations omitted).

### 3. Plaintiffs will not be Unduly Prejudiced by the Proposed Stay

Because motions to dismiss under Fed. R. Civ. P. 12(b)(6) are to be decided on the face of the complaint, discovery is inherently unnecessary to their resolution. *See Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d. 404, 435 (5th Cir. 1990). The Fifth Circuit has specifically held that "good cause [for staying discovery exists where] further discovery will impose undue burden or expense without aiding the resolution of the dispositive motions." *Fujita v. United States,* 416 F. App'x 400, 402 (5th Cir. 2011) (citing *Landry,* 901 F.2d. at 435 (upholding stay of discovery where dispositive motions presented purely legal issues and further discovery would not aid in their resolution)).

Furthermore, because Plaintiffs' amended complaints did not alter their theory of liability, the pending Motions to Dismiss are virtually identical to those which were filed and fully briefed in response to Plaintiffs' original complaints. [*See* 1:13-cv-00229, Dkt. Nos. 21 and 46; 1:13-cv-00354, Dkt. Nos. 5 and 40; 1:13-cv-00376, Dkt. Nos. 14, 15, 32, 52 and 53; 1:13-cv-00389, Dkt. Nos. 12 and 32; and 1:13-cv-00406, Dkt. Nos. 6 and 45.] The only material difference between Plaintiffs' original complaints and the most recent iterations is the addition of a claim for declaratory relief predicated upon the same facts as the original complaint, which Defendants have argued is improper as a matter of law. Thus there is no credible argument that the pending discovery is necessary for Plaintiffs to properly respond to the Motions to Dismiss.

Rule 26(f) Conference Reports have been submitted in all five proceedings. In each, the parties informed the Court that they had agreed to defer initial disclosures either on a wholesale basis or strictly as they related to the putative class members until **after** Defendants' Motions to Dismiss were resolved or until after a determination on class certification was made. [*See* 1:13-cv-00229, Dkt. No. 28 at n.1; 1:13-cv-00354, Dkt. No. 30 at n. 1; 1:13-cv-00376, Dkt. No. 29 at

4; 1:13-cv-00389, Dkt. No. 22 at n.4; and 1:13-cv-00406, Dkt. No. 36 at n.1.] To now seek extensive discovery as to each alleged putative class member is disingenuous and in violation of the spirit of the parties' previous agreements. Plaintiffs can hardly argue that a discovery stay would subject them to undue prejudice when they already agreed to forego initial disclosures related to the putative class members in all five cases.

Moreover, in one of the five actions, Plaintiffs even agreed to submit a motion to stay discovery pending a ruling on Defendants' motion to dismiss. [1:13-cv-00229, Dkt. No. 26]. At the time that motion was filed, however, no discovery was pending and the obvious and extreme burden to the parties in responding that now exists was not present, and the motion therefore was denied for failure to show good cause. [1:13-cv-00229, Dkt. No. 27]. The current posture of the cases in which Defendants are now facing over 11,000 requests for admission, 207 requests for production, and 37 interrogatories seeking information regarding every Texas loan in each trust at issue, along with untold voluminous discovery which may yet to be served, is radically different. Accordingly, the ruling in *Livingston* should have no bearing on the current motion. It is however, important to note that Plaintiffs were more than willing to stay discovery pending the resolution of the original motions to dismiss just a few short months ago. Plaintiffs cannot make a credible claim that a brief discovery stay would subject them to undue prejudice.

Finally, issuance of a stay pending the resolution of Defendants' Motions to Dismiss will not unduly delay the proceedings. The renewed Motions to Dismiss in all five cases will all be fully and exhaustively briefed by March 17, 2014. The issuance of a stay will be a brief remedy, and thus its issuance is both proper and appropriate to prevent the imposition of undue burden and expense while the parties await the Court's decision on the Motions to Dismiss.

B.  **IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER**

Defendants alternatively seek a protective order limiting Plaintiffs' requests for admission in each case to 25 aimed at seeking information necessary for class certification purposes only.  Plaintiffs' current requests for admission are objectionable because:  (1) their sheer volume is abusive and harassing; (2) Plaintiffs' attempt to obtain information regarding all putative class members is inappropriate; and (3) the scope of the requests is improper.

Requests for admission are intended to simplify litigation and save time. *See Wigler*, 108 F.R.D. 206-07.  The 5,948 requests for admission served in the *Holmes* matter, 1,738 in *Henry,* 1,793 in *Alexander,* and 1,917 in *Livingston* will not simplify any of the related cases.  Instead, they impose an oppressive burden on Defendants.  Indeed, answering the 5,948 requests by Plaintiffs in *Holmes*, would require Defendants in that case to answer nearly 200 requests **per day** in the 30 days permitted by Rule 36.

Moreover, many of the requests for admission seek information related to the claims of putative class members.  Because no class has been certified in this action, Plaintiffs' attempt to obtain discovery related to the merits of the claims of putative class members is improper.  Over 10,800 of the 11,396 requests for admission appear to serve no purpose other than to explore the substantive claims and identities of putative class members.  None of the information requested would be necessary or helpful to the Court in determining the threshold issues posed by Federal Rule of Civil Procedure 23.

Finally, the majority of the requests for admission exceed the scope of inquiry permitted by Federal Rule of Civil Procedure 36.  Requests for admission should not require reliance on documents outside of the requests themselves.  *Martin Marietta*, 2007 WL 1300772, at *2.  Here, Plaintiffs ask Defendants to admit or deny that various terms in the subject PSAs are defined

terms in the PSAs. In doing so, Plaintiffs refer to the PSAs themselves. Such requests improperly require reliance on outside documents and can serve no purpose other than harassment. Plaintiffs also ask over 10,800 requests for admission that require Defendants to admit or deny facts based on a review of various public records related to what appears to be each loan that could be in a putative class. Again, by requiring Defendants to obtain and review thousands of documents merely to admit or deny facts that are apparent on the face of public records, the requests for admission serve no purpose other than harassment.

For each of these reasons, the Court should enter a protective order stating that Defendants are not obligated to respond the requests for admission as currently drafted and requiring Plaintiffs to serve an amended set of requests for admission that are not needlessly excessive and harassing. Moreover, Defendants request that the Court limit Plaintiffs to 25 requests for admission per case to avoid additional unnecessary burden and expense.

1.  **Standards for Entry of Protective Order**

The scope of discovery is to be curtailed if its "burden or expense . . . outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). In a putative class action, pre-certification discovery is further limited to discovery substantiating class allegations to save the parties the undue burden of responding to such discovery before a class is certified. *Stewart v. Winter*, 669 F.2d 328, 331-32 (5th Cir. 1982) (affirming denial of plaintiff's motion to compel discovery where "much of this material may have been relevant to the merits of the class claims, [but] very little of it could have been 'necessary or helpful' to determining the threshold issues posed by Rule 23(a) and (b)"); *Mantolete v. Bolger*, 767 F.2d 1416, 1424-25 (9th Cir. 1985) (affirming denial of expanded discovery because plaintiff failed to demonstrate a likelihood the discovery

requested would "produce persuasive information substantiating the class action allegations"); *see also Nat'l Org. for Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. 1980) (". . . nor must discovery on the merits be completed precedent to class certification."). Accordingly, before a class is certified, a court should limit discovery to those requests which are relevant to the Rule 23 criteria. *Stewart*, 669 F.2d 331-32 ("Enforcing plaintiffs' sweeping requests would have imposed on defendants one of the major burdens of defending this omnibus class action prior to any determination that the action was maintainable as such").

### 2. The Sheer Volume of Requests for Admission Is Harassing and Abusive

Requests for admission are intended to "save[] time, trouble, and expense for the court and the litigants." *Wigler*, 108 F.R.D. at 205. However, requests for admission "should not be of such great number and broad scope as to cover all the issues [even] of a complex case, and obviously . . . should not be sought in an attempt to harass an opposing party." *Id.* at 206-07 (citation and quotation marks omitted). Here, the requests for admission are abusive and harassing, and good cause exists to disallow the requests for admission as currently drafted.

The harassing nature of Plaintiffs' requests is underscored by a proposed amendment to Federal Procedure 36, which would limit requests for admissions to 25 per party. Specifically, the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (the "Committee") has proposed that the following language be added to Rule 36: "Unless otherwise stipulated or ordered by the court, a party may serve no more than 25 requests to admit . . . ." Fed. R. Civ. P. 36(a)(2) (proposed Dec. 1, 2015). Indeed, numerous federal courts have implemented such a limit by local rule.[7]

---

[7] *See also, e.g.*, CivLR 36.1.a, United States District Court for the Southern District of California; Local Rule 104.1 (limiting parties to 25 requests for admission), United States District Court for the District of Maryland (limiting parties to 30 requests for admission); Local Court Rule CV-36, United States District Court for the Western District of Texas (same).

Numerous courts have granted protective orders to protect parties from harassment based on substantially fewer requests for admission. (*See supra* at A.1.) The *Gannon* court's opinion is particularly instructive because the court did not deem it necessary to evaluate the particular requests for admission at issue in that case. *See Gannon*, 2006 WL 2927639, at *1. Instead, the court held that 1,407 requests for admission were "grossly excessive in number and [were] therefore abusive, burdensome and oppressive." *Id.* As in *Gannon*, "[t]he burden and expense of responding to these requests for admissions far outweighs any possible benefit that Plaintiffs may derive from them." *Id.*

Defendants should not be required to respond to any of the requests for admissions in their current form. Instead, the Court should enter a protective order requiring Plaintiffs to serve amended sets of requests for admissions that are not needlessly excessive and harassing. Plaintiffs should be limited to 25 requests for admission per case, including any subparts, which is the amount of requests for admissions permitted by the proposed amendment to Rule 36. *See Phillips Petroleum Co.*, 1986 WL 9186, at *1 (limiting plaintiff to 20 requests for admission after granting motion for protective order related to 437 requests for admission).

### 3. Plaintiffs' Attempt to Obtain Information Regarding All Putative Class Members Is Inappropriate

Pursuant to the parties' agreements, the Court's scheduling orders implemented a two-tiered discovery plan, which permits the parties to engage in discovery "related to class certification" until June 30, 2014. [1:13-cv-00229, Dkt. No. 37 at ¶ 8; 1:13-cv-00354, Dkt. No. 32 at ¶ 8; 1:13-cv-00376, Dkt. No. 34 at ¶ 8; 1:13-cv-00389, Dkt. No. 24 at ¶ 8; and 1:13-cv-00406, Dkt. No. 38 at ¶ 8.] During this initial phase of discovery, discovery related to the merits of the claims of putative class members is improper. *See, e.g.*, *Stewart*, 669 F.2d at 331.

Over 10,800 of the requests for admission serve no purpose other than to explore the substantive claims of potential putative class members by asking Defendants to admit or deny three separate facts regarding what appears to be every loan that could conceivably be part of any class: (1) that the "Depositor sold, transferred, assigned, set over, and otherwise conveyed" each particular loan to each trust; (2) that each particular loan is "secured by real property in the State of Texas"; and (3) that an assignment related to each particular loan is "recorded in the State of Texas." (*See* Ex. 1 at Req. for Adm. 79-5,943.) These requests merely explore the merits of each putative class member's claims. Pre-certification discovery on those topics is improper. *See Stewart*, 669 F.2d at 331-32.

Requests for admission 79 through 5,943 in the *Holmes* matter and approximately 1,500 requests in each of the other lawsuits, other than *Bowman*, also appear to be an improper, end-run-around attempt to obtain admissions from Defendants as to the identity of putative class members. *See, e.g., Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985) (court may deny "counsel's attempt to obtain production under Rule 34 of the names of similarly situated [individuals] in order to solicit support for his efforts to certify the class."); *Dziennik v. Sealift, Inc.*, No. 05-cv-4659, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) ("Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage . . . ." (collecting authority)).

## PRAYER

WHEREFORE, for the reasons set forth above, Defendants respectfully request that the Court grant their Joint Motion to Stay Discovery and Related Deadlines Pending Resolution of Defendants' Motions to Dismiss as set forth herein. In the alternative, Defendants request the issuance of a protective order limiting Plaintiffs to 25 requests for admission, aimed at seeking

information necessary for class certification purposes only including any subparts, to avoid additional unnecessary burden and expense. A proposed order has been attached to this agreed motion for the Court's review.

          Respectfully submitted,

          DANIEL S. CONNOLLY, 2265569
          RACHEL B. GOLDMAN, 2896272
          BRACEWELL & GIULIANI LLP
          1251 Avenue of the Americas, 49th Fl.
          New York, New York 10020-1104
          (212) 508-6100 (t)
          (212) 508-6101 (f)
          daniel.connolly@bgllp.com
          rachel.goldman@bgllp.com

          By: */s/ M. Coy Connelly*

          M. COY CONNELLY
          Texas Bar No. 00793541
          BRACEWELL & GIULIANI LLP
          711 Louisiana St., Suite 2300
          Houston, Texas 77002-2770
          (713) 221-1335 (t)
          (713) 221-2159 (f)
          coy.connelly@bgllp.com

          **COUNSEL FOR DEFENDANTS JPMORGAN CHASE BANK, N.A. and DEUTSCHE BANK NATIONAL TRUST COMPANY, as TRUSTEE for MORGAN STANLEY ABS CAPITAL I INC. TRUST 2005-HE7, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-HE7**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on this the 21st day of February 2014, on the following counsel of record, via CM/ECF:

| | |
|---|---|
| W. Craft Hughes | Justin D. Audilet |
| Jarrett L. Ellzey | MAIDA LAW FIRM, P.C. |
| 2700 Post Oak Blvd., Ste. 1120 | 4320 Calder Ave. |
| Galleria Tower I | Beaumont, Texas 77706 |
| Houston, Texas 77056 | (409) 898-8400 (facsimile) |
| (888) 995-3335 (facsimile) | *Attorneys for Plaintiff* |
| *Attorneys for Plaintiff* | |

                                        */s/ M. Coy Connelly*
                                        M. Coy Connelly

## CERTIFICATE OF CONFERENCE

The undersigned lead counsel and local counsel affirm that Thomas G. Yoxall and Patricia Chamblin, counsel and local counsel for Defendants in the *Henry* and *Holmes* matters, spoke with Craft Hughes, attorney for Plaintiffs in the above-captioned, related matters on February 19, 2014, regarding the relief requested by all Defendants in this Motion. Counsel for Plaintiffs and Defendants complied with the meet and confer requirement in Local Rule CV-7(h). Mr. Yoxall and Ms. Chamblin were authorized to confer with Mr. Hughes on behalf of all Defendants in each of the above-captioned, related matters and conferred with Mr. Hughes in that capacity. Mr. Hughes stated that Plaintiffs in the above-captioned, related matters are opposed to the relief requested herein in each of the related matters. However, Mr. Hughes stated that "[he] believe[s] an extension of the deadline(s) to complete discovery and designate experts in the Scheduling Order would benefit all parties in these cases. Plaintiffs and defendants are now in a position where they will both be required to incur significant expenses for experts and discovery; but remain uncertain as to the dispositive motion(s) to dismiss currently pending before the Court." Discussions related to the Motion have conclusively reached an impasse. Thus, Defendants present this Motion to the Court to resolve.

*/s/ Robert T. Mowrey*
Lead Counsel

*/s/ Patricia D. Chamblin*
Local Counsel